IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORIO DISTAJO, JR. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PNC BANK, N.A. | : | NO.  09-2712 |

**MEMORANDUM**

Padova, J.                                                                                           October 27, 2009

Plaintiff Gregorio Distajo commenced this employment discrimination action against Defendant PNC Bank, N.A. ("PNC") after PNC terminated him from a job at one of its branches. PNC has filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6).  For the following reasons, we grant PNC's Motion.

I.      BACKGROUND

The Complaint and its attachments set forth the following facts.[1] Defendant PNC Bank employed Plaintiff, an individual of Filipino descent, for eight years, from 1996 until his termination on August 18, 2004. (Complaint ¶ 9; Pennsylvania Human Relations Commission Complaint ("PHRC Compl.") , attached as Ex. B to Complaint, ¶¶ 4, 7, 9.) Plaintiff began his employment with PNC as a Reconcilement Clerk, but was promoted in 1999 to the position of Teller Superviser. (PHRC Compl. ¶¶ 4-5.)

In 2004, prior to Plaintiff's August 2004 termination, several night deposit bags went missing

---

[1] Documents "integral to or explicitly relied upon in the complaint" may be considered in connection with a motion to dismiss.  In re Burlington Coat Factory Litig., 114 F.3d 1410, 1426 (3d Cir.1997).   Here, Plaintiff, proceeding pro se, filed a brief Complaint with numerous attachments. As we are required to liberally construe documents filed pro se, and the United States Supreme Court has instructed that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus,  551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 87, 106 (1976)), we have carefully considered all of the attachments to Plaintiff's Complaint in considering whether Plaintiff has, or could potentially, state a claim upon which relief may be granted.

at PNC.  (Plaintiff's Narrative of Relevant Facts (Pl.'s Narr.), attached as Ex. H to Compl., at 1; see generally Compl. ¶¶ 7-8, 11.)  Although the night bags were subsequently recovered, gift checks were missing from the bags, and PNC initiated an investigation.  (See Compl. ¶¶ 5, 7, 11.)  One of the tellers that Plaintiff supervised admitted to having stolen the gift checks.  (Compl. ¶ 7.)  She and her brother (who also worked at PNC) told PNC investigators that Plaintiff had not followed the proper policies and procedures in handling the night deposit bags.  (Id. ¶¶ 7-8.)  An investigator therefore questioned Plaintiff, who admitted to having placed the night bags in an unlocked vault, which violated established policies and procedures that required the bags to be kept in a secured area until processed.  (Id. ¶ 5; Pl.'s Narr. at 1).  Plaintiff attempted to explain to the investigator that he had been short-handed that night, but the investigator "abruptly interrupted" him, and began "raising her voice and yelling at" him.  (Compl. ¶ 6.)  Plaintiff also alleges that the investigator grew increasingly frustrated with his accent.  (Pl.'s Narr. at 1-2.)  Plaintiff was subsequently terminated from employment at PNC.  (PHRC Compl. ¶ 9.)  PNC's stated reason for Plaintiff's termination was his "dishonesty" in connection with its investigation.  (PHRC Compl. ¶ 10.)  The teller who admitted to stealing the gift checks, an Iranian, was also terminated.  (PHRC Compl. ¶ 15; Compl. ¶ 7.)

On January 19, 2005, prior to bringing the instant action, Plaintiff filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), in which he alleged that PNC had violated § 5(a) of the Pennsylvania Human Relations Act, 43 P.S. §§ 951-963, by terminating him on account of his Filipino ancestry.  The PHRC investigated his complaint, but found insufficient evidence on which to conclude that an act of discrimination had occurred.  (See 11/16/07 Ltr. to Pl. from PHRC, attached as Ex. B to Compl.)  Plaintiff filed objections to the PHRC's factual findings but, on

review, the PHRC again concluded that there was insufficient evidence of unlawful discrimination. (See 2/6/08 Ltr. to Pl. from PHRC, attached as Ex. D to Compl.) It therefore dismissed Plaintiff's complaint. (3/13/08 Ltr to Pl. from PHRC, attached as Ex. D to Compl.) On February 2, 2009, the EEOC informed Plaintiff that it was adopting the findings of the PHRC, and it advised Plaintiff of his rights to institute an action in the federal District Court. (2/2/09 EEOC letter, attached as Ex. 1 to Compl.)

On April 28, 2009, Plaintiff filed a Complaint in the Court of Common Pleas in Bucks County. Shortly thereafter, PNC removed the case to this Court. In Count I of the Complaint, Plaintiff asserts that PNC discriminated against him on the basis of his national origin, in violation of his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, et seq. In Count II of the Complaint, Plaintiff asserts a claim under the Pennsylvania Workers' Compensation Act ("WCA"), apparently arising out of distress and injuries he suffered as a result of being held at gunpoint during two armed robberies at PNC. (See Compl. ¶ 15.) However, in his brief in opposition to PNC's Motion to Dismiss, Plaintiff asserts that labeling this claim as a WCA claim was a mistake, and that he intended to assert a claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131-12134.

## II.    LEGAL STANDARD

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), we look primarily at the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). We take the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff. Phillips v.

County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citing Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  Legal conclusions, however, receive no deference, and the court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (cited with approval in Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).  In the end, we will grant a Rule 12(b)(6) motion if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)).

**III.   DISCUSSION**

PNC moves to dismiss both Counts of Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6).[2]  For the following reasons, we grant PNC's Motion.

---

[2] PNC also moved to dismiss Count II of the Complaint pursuant to Fed. R. Civ. P. 12(b)(1), arguing that this Court has no subject matter jurisdiction over claims for workers' compensation benefits.  As Plaintiff has abandoned any claim under the WCA, stating that he intended instead to assert an ADA claim, we need not address this aspect of PNC's motion.

### A. <u>Count I</u>

Title VII prohibits employment discrimination on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2. In order to state a claim for discriminatory discharge under Title VII, a plaintiff must allege that: (1) he is a member of a protected class; (2) he is qualified for the position from which he was terminated; (3) he was fired from the employment position; and (4) he was removed under circumstances that give rise to a inference he was fired because of his membership in a protected class. See <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973); <u>Waldron v. SL Indus., Inc.</u>, 56 F.3d 491, 494 (3d Cir. 1995)(citing <u>Tex. Dep't of Cmty Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981)); <u>Omogbehin v. Dimensions Intern., Inc.</u>, Civ. A. No. 08-3939, 2009 WL 2222927, at *4 (D.N.J. July 22, 2009). Factual allegations that can give rise to a reasonable inference of discrimination include that similarly situated employees outside of a plaintiff's protected class were more favorably treated, or that the plaintiff was replaced by a person outside the protected class. See <u>Sarullo v. U.S. Postal Service</u>, 352 F.3d 789, 798 n.7 (3d Cir. 2003).

Here, Plaintiff alleges in the PHRC Complaint that he is Filipino, <u>i.e.</u>, a member of a protected class, and that he was terminated from his position with PNC. Moreover, he also sufficiently alleges that he was qualified for his position as Supervising Teller, as the Complaint filed in this action avers that he has worked at PNC for several years and has as attachments various performance reviews and certificates of achievement that Plaintiff received in connection with his employment at PNC. (<u>See</u> Ex. C to Compl.) However, Plaintiff has not sufficiently alleged that he was terminated from his Supervising Teller position under circumstances that give rise to an inference that he was terminated on account of his Filipino descent.

As an initial matter, we note that Plaintiff does not state anywhere in the instant Complaint that he was fired because of his national origin, much less include any facts in that Complaint from which such an inference could be made.  Plaintiff did allege in the PHRC Complaint that he believed that his termination "was due to [his] ancestry because [PNC] knew that . . . the bank was short staffed."  (PHRC Compl. ¶ 14.)  He also alleged in the PHRC Complaint that only foreign-born employees (he and the co-worker who admitted to stealing the gift checks) were investigated in connection with the missing night deposit bags, and that other "American born" employees have violated PNC's policies without being terminated for those violations.  (Id. ¶¶ 11, 15).  As one example of allegedly favorable treatment of another employee, Plaintiff alleged that a Financial Supervisor at the bank (whose national origin Plaintiff does not specify) has not been investigated even though he has stayed late at the branch by himself and made mistakes on loans.  (Id. ¶ 12.)  Plaintiff also alleged that Lolita Esposito, a branch manager, was aware of problems with "changing the combinations or keys on the night deposit vault" and yet "did not act right away for an investigation" when gift checks went missing. (Id. ¶ 11.)  Finally, as noted above, Plaintiff states in a factual narrative attached to the instant Complaint that the investigator who questioned him regarding the missing night deposit bags grew "increasingly frustrated with" his accent and did not permit him to explain his policy transgressions.  (Pl.'s Narr. at 1.)

We find that none of these allegations give rise to an reasonable inference that PNC terminated Plaintiff on account of his ancestry or national origin.  While allegations of dissimilar treatment of non-minority employees who engaged in conduct similar to Plaintiff's could give rise to an inference of discrimination, Plaintiff's allegations concerning other employees did not involve

conduct that was similar to Plaintiff's, i.e., dishonesty in the course of an investigation. Moreover, while Plaintiff asserts that only two employees were disciplined in connection with the missing night deposit bags, and both of those employees were minorities, he does not allege that any non-minorities engaged in any misconduct in connection with the night deposit bags. Thus, the fact that two minority employees were disciplined simply does not give rise to an inference of discrimination. Plaintiff is therefore left only with his allegation that the investigator who questioned him was "frustrated with" his accent. It is self-evident that this allegation alone is simply insufficient to raise Plaintiff's Title VII claim of discriminatory discharge above a speculatory level.

In the end, Plaintiff's primary complaint appears to be that he had a valid excuse for failing to follow PNC's policies and procedures for the securing of the night deposit bags and that, as a result, PNC should not have disciplined him. (See, e.g., Complaint ¶ 4 (Plaintiff's "violation of policies and procedures . . . can be attributed to a regular Monday in which Plaintiff was short-handed on personnel."); Id. ¶ 5 ("Plaintiff believes that he was not fully given a chance to properly explain [his] actions, and the circumstances which explain why Plaintiff did not follow money bag handling procedures."); Id. at 4 ("Plaintiff respectfully requests that he be given a chance to prove himself as a valuable employee again.")). However, mere disagreement with an employer's disciplinary decision does not give rise to an inference of discriminatory discharge in violation of Title VII. See Bullock v. Children's Hosp. of Philadelphia, 71 F. Supp. 2d 482, 490 (E.D. Pa. 1999) (stating that plaintiff's disagreement with employer's assessment of plaintiff's job performance is not sufficient to raise a presumption of discrimination). Accordingly, we find that Plaintiff has failed to allege a plausible Title VII claim and, thus, has failed to state a Title VII claim upon which relief

may be granted.

### B. Count II

Count II is framed as a claim under the WCA. However, Plaintiff states in his response to PNC's Motion to Dismiss that he intended to assert a claim under Title I of the ADA, which prohibits employers from discriminating against qualified individuals with disabilities. He therefore asks that we consider Count II to be an ADA claim, not a claim under the WCA, and we will do as requested.

Before a plaintiff may assert an ADA claim in federal court, he must first exhaust his administrative remedies with respect to that claim. See Churchill v. Star Enterprises, 183 F.3d 184, 190 (3d Cir. 1999); Fullman v. Phila. Int'l Airport, 49 F. Supp. 2d 434, 442 (E.D. Pa. 1999)("Prior to filing a lawsuit under the ADA, a plaintiff must file a charge of discrimination with the EEOC and receive a right to sue letter before filing a complaint in federal court." (citing 42 U.S.C. § 2000e-5(e)(1), (f)(1))). The purpose of the exhaustion requirement is to "resolve disputes by informal conciliation, prior to litigation." Butterbaugh v. Chertoff, 479 F. Supp. 2d 485, 497 (W.D. Pa. 2007) (citing Anjelino v. New York Times Co., 200 F.3d 73, 93 (3d Cir. 1999)). Thus, "suits in the district court are limited to matters of which the EEOC has had notice and a chance, if appropriate, to settle." Id. (citing Anjelino, 200 F.3d at 93). Ultimately, "'the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .'" Webb v. City of Philadelphia, 562 F.3d 256, 263 (3d Cir. 2009)(quoting Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).

In this case, Plaintiff filed a Complaint with the PHRC, which was dually-filed with the

EEOC. However, that Complaint did not raise a claim under the ADA but, rather, only asserted a claim of discrimination based on Plaintiff's ancestry. (See PHRC Compl. (asserting a single Count, entitled "Discharge" "Ancestry-Discrimination")). Indeed, there is no mention in the PHRC Complaint of Plaintiff suffering a disability, and the materials attached to the instant Complaint make clear that neither the PHRC nor the EEOC investigated any claim of discrimination under the ADA. As the "parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination," Webb, 562 F.3d at 263 (quotation omitted), and it could not be reasonably expected for an ADA claim to grow out of a claim of discrimination based on ancestry, we find that Plaintiff did not exhaust his administrative remedies with respect to any ADA claim.[3] Accordingly, we cannot now entertain his claim under the ADA and we grant PNC's Motion to Dismiss Count II of Plaintiff's Complaint.

### C. Leave to Amend

In civil rights cases, "district courts must offer amendment -- irrespective of whether it was requested -- when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004) ("[I]f a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment

---

[3] Plaintiff argues that PNC was on notice of his ADA claim on account of a letter that an attorney acting on his behalf sent to PNC in September of 2004. However, even assuming arguendo that notice to a defendant alone can suffice to exhaust administrative remedies, the letter to which Plaintiff refers did not put PNC on notice of any ADA claim. To the contrary, it merely noted that Plaintiff had been under considerable emotional stress due to two armed robberies at his workplace and that his condition was aggravated by his dismissal. (See Ex. B to Pl.'s Mem. in Resp. to Mot. to Dism.) The letter neither mentions the ADA nor suggests that Plaintiff was discharged as a result of any disability.

would be inequitable or futile." (citing Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002))). Futility "means that the complaint, as amended, would fail to state a claim upon which relief could be granted." Burlington Coat Factory, 114 F.3d at 1434 (citation omitted). In assessing futility, we apply the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6). Id. (citation omitted).

In this case, we find that any amendment to Plaintiff's Title VII and ADA claims would be futile. Indeed, we can discern no factual basis in any of the many documents that Plaintiff has submitted that would suggest that PNC was motivated by a discriminatory animus when it terminated him. In the absence of facts on which to base a Title VII discrimination claim, we are confident that any amendment of that claim would not produce a claim upon which relief could be granted. Similarly, it is clear that Plaintiff could not state a cognizable ADA claim because he has failed to exhaust his administrative remedies with respect to that claim. We therefore decline to grant Plaintiff leave to amend.[4]

---

[4]Plaintiff has also requested that we appoint him counsel. We have authority to appoint counsel under Title VII. See 42 U.S.C. § 2000e-5(f)(1)(B). However, before doing so, we "must determine whether the plaintiff's claims have some merit in fact or law." Paramore v. Pa. State Police, Civ. A. No.06-5316, 2007 WL 1302404, at *2 (E.D. Pa. 2007) (citing, e.g., Parham v. Johnson, 126 F.3d 454, 457 (3d Cir. 1997)). As we have explained above, Plaintiff cannot state any claim upon which relief may be granted. Accordingly, there is simply no justification for appointing counsel in this matter. Plaintiff's request for counsel is therefore denied.

**IV.     CONCLUSION**

For the foregoing reasons, we grant PNC's Motion to Dismiss Plaintiff's Complaint in its entirety and dismiss Plaintiff's Complaint.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

John R. Padova, J.